No. 26,129.

JOSEPH H. YOUNG, *Appellee*, v. W. E. NEWBOLD, *Appellant*.

SYLLABUS BY THE COURT.

1. BROKERS—*Action for Compensation—Pleading—Evidence—Instructions.* In an action for an agent's commission on a sale of real estate, the record examined and appellant's assignment of errors considered, and *held:* (*a*) Plaintiff's reply to defendant's answer contained no material departure from the allegations of his petition, and the objection to the introduction of evidence was properly overruled; (*b*) plaintiff's evidence substantially supported all the material matters constituting his cause of action and was not subject to demurrer; (*c*) the matters urged in defendant's behalf were insufficient to constitute a defense to plaintiff's action; (*d*) there was no error in the instructions given or refused; (*e*) no error in the submission of special questions to the jury; and (*f*) the jury's special findings were supported by competent and sufficient evidence.

2. INTEREST—*Time and Computation—Demands Liquidated.* In an action for a real-estate agent's commission, where there was no dispute as to the amount due the agent if he was entitled to any commission at all, interest was properly allowed from a date when the liability to pay the commission was absolute, not the date when judgment for his commission was entered in plaintiff's behalf.

Appeal from Decatur district court; WILLARD SIMMONS, judge. Opinion filed October 10, 1925. Affirmed.

*J. P. Noble* and *W. K. Thompson,* both of Oberlin, for the appellant.

*A. C. T. Geiger, W. S. Langmade* and *V. D. Woodward,* all of Oberlin, for the appellee.

1. Brokers, 9 C. J. §§ 79, 93, 102, 130; Pleading, 31 Cyc. p. 256. 2. Brokers, 9 C. J. § 77; Interest, 33 C. J. § 73.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered judgment from the defendant for a real-estate dealer's commission on the sale of certain Decatur county lands, and defendant appeals.

The facts are briefly these: In March, 1919, defendant Newbold and wife listed with plaintiff 240 acres of land for sale at a net price of $23 per acre, totaling $5,520, with the understanding that plaintiff should have as his commission all he could get above that price. This listing agreement was in writing and covered certain details touching a mortgage on the property, an interest in a growing wheat crop which should go to the purchaser, time when possession would be given, and stipulated that plaintiff's agency contract would continue in force until September 1, 1919. On April 23, 1919, the original contract of agency was altered by a mutual agreement covering the extent of the interest in the wheat crop which would pass to any purchaser of the property.

About the same time the listing contract for the sale of the 240 acres was given by the defendants to plaintiff, they also authorized plaintiff by a separate contract in writing to sell 80 acres of land located at some distance from the other property. The price was fixed at $15 per acre, $1,200, and plaintiff was to have as his commission whatever he could induce a buyer to pay over that sum. Other details of this contract are of no present importance, but were quite similar to those of the contract dealing with the 240 acres.

On May 31, 1919, plaintiff found a purchaser, H. Q. Banta, who agreed to buy the 240 acres for $6,400. Plaintiff notified defendant W. E. Newbold to that effect, and the latter declared that he did not wish to sell the 240 acres unless he also sold the 80 acres. To bring that about, plaintiff offered to buy the 80 acres himself, but suggested that he would be equitably entitled to some commission if he should sell the 80 acres to a stranger, so a price of $1,100 net to Newbold was agreed on, and plaintiff agreed to buy it himself at that price. This arrangement would net to the Newbolds the aggregate sum of $6,620, being their prescribed price of $5,520 for the 240 acres and $1,100 for the 80 acres. A written contract in accord with this agreement, and which specifically took cognizance of the contract of sale already made to Banta covering the 240 acres, was signed by Newbold and plaintiff. But the deal with Banta for the 240 acres was never consummated, through no fault of plaintiff.

Mrs. Newbold declined to sign the conveyances, and for this and perhaps other reasons the Newbolds breached the contract made by the plaintiff, their agent, with Banta. The latter was defeated in an action against the Newbolds for specific performance. (*Banta v. Newbold,* 108 Kan. 578, 196 Pac. 433.) Plaintiff brought this action for his commission on the sale of the 240 acres, which was the difference between the listing price of $5,520 and the $6,400 which Banta had agreed to give. Judgment for that amount, $880, was entered in plaintiff's behalf.

Defendant W. E. Newbold assigns various errors, the first of which is that his objection to the introduction of evidence should have been sustained. This point is urged on the assumption that plaintiff's reply contained a material departure from the allegations of his petition. Such departure cannot be discerned. The petition recited the facts on which plaintiff relied for the recovery of $880, and while the reply developed and amplified certain matters which the pleader deemed important in view of the matters alleged in defendant's answer, yet the same facts set forth in his petition continued to be those of controlling significance set forth in the reply. If plaintiff's reply were subject to any technical criticism it would be that it was really not the pleading to file, for a critical examination of defendant's answer hardly discloses any substantial defense, and perhaps plaintiff should have lodged a demurrer against it instead of a reply. At all events, the contention that the reply contained a departure cannot be sustained.

Defendant next argues that his demurrer to plaintiff's evidence should have been sustained. He contends, correctly, that plaintiff must recover on his listing contract or not at all. But it does not appear that plaintiff failed in any material respect to earn his commission under that listing contract. He was to find a purchaser for that 240 acres at a price which would net $5,520 to defendant. He did find such a purchaser. He was to have as his commission all he could induce such purchaser to pay over $5,520. The purchaser agreed to pay $6,400. That left a margin of $880 as a commission for plaintiff.

Now, just why should plaintiff be denied his commission? Through any fault of plaintiff's? We discern none. Through any shortcoming of Banta, the purchaser? Not at all. The sale fell through because Newbold and wife declined to respect the contract made on their behalf. It is true, perhaps, that plaintiff could have

bound Newbold and wife irrevocably to the contract of sale if he and Banta had reduced the contract of purchase to writing. But since Banta was willing to be bound without such writing, the want of that writing was immaterial. Newbold cannot be heard to say, "Because you failed to bind my wife and me to perform our contract with Banta, I will pay you nothing for your services." And yet that is the absurd attitude of defendant in this case. Defendant has a good talking point, of course, growing out of the contract of June 3 between himself and Young, in which plaintiff acquiesced in defendant's insistence that the 80 acres should also be sold, but that matter gave him no excuse for repudiating the sale to Banta. Plaintiff agreed to buy the 80 acres himself, but that contract expressly stated that it was made, in part, to give effect to the contract of sale to Banta, the pertinent recital reading—

"This agreement, made and entered into this third day of June, 1919, by and between W. E. Newbold (wife, Emma Newbold), parties of the first part, and Joseph H. Young, of the second part, all of Decatur county, Kansas,

"Witnesseth: That in pursuance to the listing contract heretofore made with second party and under which second party has sold a portion of the hereinafter described land to one H. Q. Banta, and in consideration of the covenants and agreements of the party of the second part, the party of the first part has this day sold to the party of the second part the following-described real estate, to wit:" (Here follows legal description of the 240 acres sold to Banta and the 80 acres plaintiff bought on his own behalf.)

It is argued that this contract of June 3 between defendant and plaintiff made it impossible for defendant to convey the land to Banta. On the contrary, it was designed to insure a conveyance to Banta by leaving defendant no excuse for nonperformance. The mode of getting the title into Banta's name was immaterial if Banta was satisfied to take it either directly from the Newbolds or mediately through plaintiff, and that feature of the matter was fully developed in the testimony touching the tenders made to the Newbolds on September 1, 1919, before either Banta's action for specific performance or this action was begun.

It is also argued that plaintiff ceased to be the agent of defendant when he himself became a purchaser, a principal. That is technically true as to the status of the plaintiff touching the 80 acres, but not as to the 240 acres, and that is the matter involved herein.

Error is assigned on the instructions, in that they "ignored the fact that Young [plaintiff] in his listing contract was to secure a binding contract to sell the land." As we have pointed out, this

contract of sale was wanting only in binding force because defendant Newbold and wife failed to recognize it as binding. But they cannot effectively urge their own recreancy as a delinquency of plaintiff.

It is also urged that it was error to instruct the jury to allow plaintiff six per cent interest from September 1, 1919. Defendant contends that the damages being unliquidated, no interest could be allowed. But if defendant was liable at all, he was liable for $880, neither more nor less; and since it eventually was determined that defendant's liability was absolute from the time defendant repudiated the contract made with Banta by plaintiff in defendant's behalf, and that date was no later than September 1, 1919 (although an earlier date might have been designated from the evidence), there was no error in the instruction touching defendant's liability for interest. (*Smith Bros. v. Hanson,* 106 Kan. 32, 187 Pac. 262; *Currant v. Lenger,* 107 Kan. 107, 190 Pac. 432; *Emerson v. Indemnity Association,* 112 Kan. 426, 211 Pac. 622; *Fall v. Tucker,* 113 Kan. 713, 216 Pac. 283; *Gartner v. Oil & Gas Co.,* 115 Kan. 88, 222 Pac. 72.)

Error is assigned on the submission of special questions to the jury. These, with the jury's answers, read:

"1. Was the contract, exhibit A and exhibit B, entered into between W. E. Newbold and his wife, Emma Newbold, with plaintiff, Joseph H. Young, authorizing him to find a purchaser of the 240 acres therein described on the conditions and terms therein set forth on the dates therein stated? A. Yes.

"2. Did the plaintiff Young, within the time provided in said contracts, Exhibit A and Exhibit B, procure a *bona fide* purchaser in the person of H. Q. Banta, who was ready, willing and able to purchase and pay for said 240 acres of land according to the terms of said contract? A. Yes.

"3. If you answer question number 2 in the affirmative, what did the said H. Q. Banta agree to pay for said land? A. $6,400.

"4. If you answer 'yes' to No. 2, was he, the said H. Q. Banta, still ready, able and willing to so purchase said 240 acres of land up to and including September 1, 1919? A. Yes.

"5. Did the defendant Newbold refuse to convey the said 240 acres land described in contracts, exhibits A and B, to the said H. Q. Banta on the terms set forth in said listing contracts? A. Yes."

It is contended that there was no legal evidence to support findings 2 to 5, inclusive, and that judgment should neither have been rendered on these findings nor on the general verdict. Just in what respect the evidence failed to support these findings or the general verdict, or why judgment should not be rendered thereon, cannot be discerned from a patient perusal of the abstracts and briefs. The record contains no error, and the judgment is therefore affirmed.