AUSTIN PULPUS *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW. *Murder.  Evidence.*

Where, on a prosecution for murder, there was no evidence of a conspiracy between the defendant and others, who were present at the killing, it was error to admit testimony, over defendant's objection:

(*a*) That defendant and such other persons were at the place where deceased was working on the day of the homicide but before it occurred;

(*b*) That such other persons who were with the defendant at the time of the killing were armed with sticks which were deadly weapons, and that some of them participated in the homicide; and

(*c*) That defendant and another were at a certain store on the day before the killing, when defendant called for pistol cartridges, without permitting defendant to prove by that other how he came to be with defendant.

FROM the circuit court of, first district, Chickasaw county. HON. EUGENE O. SYKES, Judge.

Pulpus, appellant, was indicted jointly with Alexander Pulpus and Arthur Orr for the murder of one George Anderson. A severance was granted and appellant was separately tried, convicted and sentenced to be hanged, from which conviction and sentence he appealed to the supreme court—the first appeal. The supreme court reversed the conviction and awarded a new trial.  See *Pulpus* v. *State,* 82 Miss., 548.

Upon the remand of the case to the court below appellant was again separately tried and convicted of murder and a second time condemned to death.  From this second conviction he took the present appeal.

On the day before the killing, Austin Pulpus, Isaiah Gillespie, and others were ditching for Joseph Randall. George Anderson, deceased, went to where they were en-

gaged, and got into a difficulty with Austin Pulpus, appellant, and struck him over the head with a spade. On the day of the homicide, Alexander Pulpus, Austin Pulpus, Arthur Randall, Theodore Wilson, and James Wilson went to Joseph Randall's house, where George Anderson was at work, and got Randall to go with them to measure up the ditches that had been completed. Each of them had rabbit sticks. These parties afterwards came back by Randall's house, and Austin Pulpus and George Anderson got into a difficulty, and Anderson was killed by Pulpus. On the trial the state was allowed to prove, over defendant's objection, that appellant and Isaiah Gillespie were at Lundy Smith's store the day before the killing, and appellant asked for some pistol cartridges. Appellant tried to have Gillespie explain how and why he happened to be at Smith's store with him, but was not allowed to do so. The state also proved, over defendant's objection, that on the morning of the homicide his companions were armed with sticks, and that these sticks were deadly weapons, and were capable of inflicting great bodily harm, and that some of them participated in the homicide.

*Gilleylen & Leftwich,* and *T. J. Buchanan,* for appellant.

That defendant is not guilty of murder under the facts of this case, was fully decided by this court on the former appeal. That is, *res adjudicata,* for the state's evidence is substantially the same as it was at the former trial and the defendant's much stronger.

The state's persistent and ineradicable theory, totally unsupported by the competent evidence both at the former trial and this one, was that there was a deep-dyed and malignant conspiracy between some negro boys, Austin Pulpus, Alexander Pulpus, Arthur Orr, Theodore Wilson and James Wilson to kill George Anderson. This court found on the former record that there was no conspiracy, but with that ruling overturning the very foundation of the case as a case of murder, the court

below erroneously held several pieces of evidence to be competent.

The court below erred in allowing the district attorney, over defendant's objection, to ask Joseph Randall about Isaiah Gillespie, Alexander Pulpus, Arthur Orr, Jesse Wilson, Theodore Wilson and James Wilson being at Joseph Randall's house with defendant on the morning of the day of the difficulty and before the · difficulty occurred, and about their having rabbit sticks with them, and as to what rabbit sticks were, and as to their standing around and talking to George Anderson, deceased.

The court below erred in allowing the district attorney to ask Lundy Smith about Isaiah Gillespie being with Austin Pulpus at his store the evening before the difficulty to buy cartridges, and in refusing to allow defendant to prove by Isaiah Gillespie when he came on the stand why he went there and when and where he and Austin Pulpus had been.

The court below erred in allowing the district · attorney to prove by Bettie Randall, over defendant's objection, that Alexander Pulpus and Arthur Orr threw rabbit sticks at George Anderson, deceased, and that those same parties had been at Joseph Randall's that morning before the killing, there being no evidence of a conspiracy.

*J. N. Flowers,* Assistant Attorney General, for appellee.

If the record now before the court had been presented on the former appeal there would have been no reversal. The court below on the last trial carefully regarded all the suggestions of this court, and avoided all the mistakes made on the first trial. Without the aid of counsel's suggestions it could not be discovered that a conspiracy was thought of by the presiding judge, or that the admission of any testimony was influenced by any such theory.

Counsel call attention to two instances. They say, first, that the witness who was with defendant at Lundy Smith's

store was not permitted to tell why he was there with him at the time defendant was trying to buy cartridges. But this witness was not on trial, the defendant was not responsible for his acts; it was not attempted to be shown that he had anything to do with the killing; it was not attempted to bind defendant by anything this witness did. It was impossible to conceive how the exclusion of his explanation of how he came to be there could have prejudiced defendant's case. It would have been admissible only upon the very theory which counsel say has no place in this case. It was competent to ask if he was there in order that he might then be asked if the defendant tried to buy cartridges.

In the second place, they say the state was permitted to show that the accused was at Joseph Randall's house on the morning of the day of the killing and these other negro boys were with him, and that they had rabbit sticks in their hands. How could this affect the verdict when it was not attempted to be shown that any of these parties at that time tried to hurt George Anderson, or that any of them at any time took any part in the difficulty? One who is out on a hunt for evidence of a conspiracy theory would never condemn this testimony. If it was not wrong to show that defendant and deceased met on the day of the killing a few hours before the tragedy, was it wrong to show who was present at the meeting? The defendant himself would want this testimony if the state did not offer it—he would offer it to show that he had other opportunities to kill deceased with the pistol he had in his pocket if he had been looking for him, and this, too, at a time when his friends were around him armed with dangerous weapons. It was perhaps incompetent to show what the men who were with him had in their hands, but the testimony, if worth anything at all was worth as much to the defendant as it was to the state.

Argued orally by *T. J. Buchanan,* and *G. J. Leftwich,* for appellant.

TRULY, J., delivered the opinion of the court.·

Upon the former appeal of this case, it was reversed for the granting of erroneous instructions on the part of the state; but it was held by the court, and the opinion so states, that there was no proof of any conspiracy, and that the evidence showed conclusively that the meeting of the various parties on the morning of the homicide was wholly accidental. In the light of that opinion, it was error to admit testimony showing that the defendant and other named individuals were at Randall's house on the day of the homicide, and before it occurred. It was error to permit the introduction of testimony on the part of the state showing that the companions of defendant on the occasion in question were armed with sticks, and to admit proof that such sticks were deadly weapons, or were capable of inflicting great bodily harm. It was error to admit testimony that others than the defendant and the deceased participated in the homicide. It was error to permit the witness Smith to testify as to why defendant's companion was at his store on the day before the homicide, and not permit Gillespie to explain how it happened that he was with the defendant on the occasion in question. If, as decided on the former appeal, there was no conspiracy, it follows that the testimony referred to was incompetent and without probative force, and could only serve the purpose of prejudicing the minds of the jury by inducing them to believe that the deceased met his death in pursuance of a preconcerted plan concocted by defendant and others. For this reason, the court should have followed the intimation of the former opinion herein, and restricted the testimony to the immediate scene of the killing, and to such acts and conduct of the combatants engaged therein as might shed light thereon.

The assignment of error predicated of the alleged action of the court in drawing the special venire is not presented with sufficient definiteness to enable us to pass on it. And as the other

---

---

assignments may not arise on another trial, we do not deem it necessary to decide them at this time.

*Reversed and remanded.*